UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| L&J MATTSON'S CO. )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>THE CINCINNATI INSURANCE )<br>COMPANY, INC., )<br>)<br>Defendant. ) | No. 20 C 7784<br><br>Judge Jorge L. Alonso |

# MEMORANDUM OPINION AND ORDER

After defendant denied plaintiff's insurance claim for pandemic-related losses, plaintiff filed in the Circuit Court of Cook County a three-count complaint alleging, among other things, breach of contract. After removing the case to this court, defendant filed a motion to dismiss.[1] For the reasons set forth below, the Court grants the motion to dismiss.

## I.    BACKGROUND

The following facts are from plaintiff's complaint, which the Court takes as true. The quoted portions of plaintiff's insurance policy are from the policy attached to defendant's motion to dismiss.[2]

---

[1] The Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332(a)(1). The amount in controversy exceeds $75,000.00. [Docket 1 at ¶ 1]. Defendant Cincinnati Insurance Company (named as the Cincinnati Insurance Companies, Inc., an entity that does not exist) is a citizen of Ohio (its State of incorporation and the location of its principal place of business). [Docket 1 at ¶ 3, 8]. Plaintiff L&J Mattson's Co. has one member, Bill Apostolou, who is a citizen of Illinois. [Docket 1 at ¶ 7].

[2] In its complaint, plaintiff alleges that Mattson's Steak House was covered by policy number ECP0409957. [Docket 1-1 at ¶ 8]. Defendant attached a copy of plaintiff's actual policy to its motion to dismiss. [Docket 5-1]. The Court may consider the copy defendant attached, because it is referred to in plaintiff's complaint and is central to plaintiff's claim that defendant breached

Plaintiff L&J Mattson's Co. ("Mattson's") owns and operates Mattson's Steak House, a restaurant in Burbank, Illinois. Plaintiff paid premiums to defendant for insurance policy number ECP0409957 (the "Policy") for coverage of Mattson's Steak House. The Policy was in effect from October 31, 2019 to October 31, 2020. The Policy was an all-risk policy and included coverage provisions for commercial property, commercial general liability, commercial crime, commercial auto and commercial umbrella. (Policy at CIC 004/Docket 5-1 at 5).

The Policy states, among other things:

**BUILDING AND PERSONAL PROPERTY COVERAGE FORM
(INCLUDING SPECIAL CAUSES OF LOSS)**

\* \* \*

**SECTION A. COVERAGE**

We will pay for direct "loss" to Covered Property at the "premises" caused by or resulting from any Covered Cause of Loss.

**1.** **Covered Property**

Covered Property, as used in this Coverage Part, means the following types of property for which a Limit of Insurance is shown in the Declarations:

**a.** **Building**

Building, means the building or structure described in the Declarations, including:

**(1)** Completed additions;
**(2)** Fixtures, including outdoor fixtures;
**(3)** Permanently installed:

**(a)** Machinery and equipment;
**(b)** Building glass . . .;
**(c)** Signs attached to a building or structure . . .
**(d)** Awning and canopies;

---

the policy. *Equal Employment Opportunity Comm'n v. Concentra Health Services, Inc.*, 496 F.3d 773, 778 (7th Cir. 2007).

**(4)** Personal property owned by you that is used to maintain or service a covered building or its "premises", including:

    **(a)** Fire extinguishing equipment;
    **(b)** Outdoor furniture;
    **(c)** Floor coverings; and
    **(d)** Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering;

\* \* \*

**3.** **Covered Causes of Loss**

  **a.** **Covered Causes of Loss**

Covered Causes of Loss means direct "loss" unless the "loss" is excluded or limited in this Coverage Part.

\* \* \*

**(2)** We will not pay for "loss" caused by or resulting from any of the following:

\* \* \*

  **(b)** **Delay or Loss of Use**
Delay, loss of use or loss of market.

\* \* \*

**SECTION E. ADDITIONAL CONDITIONS**

\* \* \*

  **b.** **Business Income and Extra Expense**

\* \* \*

**(1)** **Business Income**

We will pay for the actual loss of "Business Income" and "Rental Value" you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct "loss" to property at a "premises" caused by or resulting from any Covered Cause of Loss." . . .

3

\* \* \*

> **(3)** **Civil Authority**
>
> When a Covered Loss causes damage to property other than Covered Property at the "premises", we will pay for the actual loss of "Business Income" and necessary Extra Expense you sustain caused by action of civil authority that prohibits access to the "premises", provided that both of the following apply:
>
> **(a)** Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage; and
>
> **(b)** The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

\* \* \*

**SECTION G. DEFINITIONS**

\* \* \*

**8.** "Loss" means accidental physical loss or accidental physical damage.

\* \* \*

**11.** "Period of restoration" means the period of time that:

**a.** Begins at the time of direct "loss".

**b.** Ends on the earlier of:

**(1)** The date when the property at the "premises" should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

**(2)** The date when business is resumed at a new permanent location.

\* \* \*

# BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM – ILLINOIS

\* \* \*

**SECTION A. COVERAGE**

\* \* \*

1. **Business Income**

    **a.** We will pay for the actual loss of "Business Income" you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct "loss" to property at "premises" which are described in the Declarations and for which a "Business Income" Limit of Insurance is shown in the Declarations. The "loss" must be caused by or result from a Covered Cause of Loss. . . .

    \* \* \*

3. **Covered Causes of Loss**

    See **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 3. Covered Causes of Loss.**

    \* \* \*

5. **Additional Coverages**

    \* \* \*

    **b.** **Civil Authority**

    When a Covered Cause of Loss causes direct damage to property other than Covered Property at the "premises", we will pay for the actual loss of "Business Income" you sustain caused by action of civil authority that prohibits access to the "premises", provided that both of the following apply:

    **(1)** Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage; and

    **(2)** The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

* * *

**SECTION F. DEFINITIONS**

* * *

**6.** "Loss" means accidental physical loss or accidental physical damage.

* * *

**8.** "Period of restoration" means the period of time that:

    **a.** Begins at the time of direct "loss".

    **b.** Ends on the earlier of:

        **(1)** The date when the property at the "premises" should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

        **(2)** The date when business is resumed at a new permanent location.

(Policy at CIC 028, CIC 030, CIC 033, CIC 042-44, CIC 063-064, CIC 100-101, CIC 107-108/Docket 5-1 at 29, 31, 34, 43-45, 64-65, 101-102, 108-109). The Policy does not contain a virus exclusion.

In March 2020, the World Health Organization declared a global pandemic based on the threat of a novel coronavirus, SARS-CoV-2, that causes COVID-19. Plaintiff alleges the virus is a "physical substance" (Complt. ¶ 40) and that it can "spread through droplets in the air when someone coughs or sneezes." (Complt. ¶ 43). Plaintiff alleges the virus particles "can remain suspended in the air for hours" and can survive on copper surfaces for up to four hours, cardboard for up to 24 hours, and plastic or stainless steel for two to three days. (Complt. ¶ 45).

Plaintiff alleges that SARS-CoV-2 virus particles have been "physically present" at Mattson's, as have people carrying the virus. (Complt. ¶ 64). Plaintiff alleges the presence of SARS-CoV-2 virus particles "renders the premises unsafe." (Complt. ¶ 57). It alleges the presence of the virus "causes direct physical loss to the property" and "causes direct physical damage to the property." (Complt ¶¶ 55 & 56). Specifically, plaintiff alleges "COVID-19 alters

the physical landscape of the surfaces on which it is present, rendering those surfaces impure and consequently impairing their value and usefulness." (Complt. ¶ 102).

On March 15, 2020, Illinois Governor J.B. Pritzker issued an Executive Order "requiring that all bars, restaurants, and movie theaters close to the public beginning March 16, 2020 and continuing through March 30, 2020." (Complt. ¶ 69). The order "prohibited the public from accessing Plaintiff's premises, thereby causing the necessary suspension of its operations." (Complt. ¶ 73). Plaintiff alleges that it was "forced to make material physical alterations to the premises in order to host customers in a COVID-19 friendly environment." (Complt. ¶ 77).

Plaintiff alleges that it has sustained losses due to the presence of the virus and due to the Governor's Executive Order. Plaintiff made a claim to defendant, and defendant denied the claim.

Based on these allegations, plaintiff asserts claims for declaratory judgment (Count I), breach of contract (Count II) and violation of 215 ILCS 5/155 (Count III). Defendant moves to dismiss.

## II. STANDARD ON A MOTION TO DISMISS

The Court may dismiss a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure if the plaintiff fails "to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). Under the notice-pleading requirements of the Federal Rules of Civil Procedure, a complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint need not provide detailed factual allegations, but mere conclusions and a "formulaic recitation of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555. To survive a motion to dismiss, a claim must be plausible.

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Allegations that are as consistent with lawful conduct as they are with unlawful conduct are not sufficient; rather, plaintiffs must include allegations that "nudg[e] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

In considering a motion to dismiss, the Court accepts as true the factual allegations in the complaint and draws permissible inferences in favor of the plaintiff. *Boucher v. Finance Syst. of Green Bay, Inc.*, 880 F.3d 362, 365 (7th Cir. 2018). Conclusory allegations "are not entitled to be assumed true," nor are legal conclusions. *Iqbal*, 556 U.S. at 680 & 681 (noting that a "legal conclusion" was "not entitled to the assumption of truth[;]" and rejecting, as conclusory, allegations that "'petitioners 'knew of, condoned, and willfully and maliciously agreed to subject [him]' to harsh conditions of confinement"). The notice-pleading rule "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-679.

Where a plaintiff alleges a breach of contract, a district court "may determine [the contract's] meaning as a matter of law" if "the contract is unambiguous." *McWane, Inc. v. Crow Chi. Indus., Inc.*, 224 F.3d 582, 584 (7th Cir. 2000). An "unambiguous contract controls over contrary allegations in the plaintiff's complaint." *McWane*, 224 F.3d at 584.

### III. DISCUSSION

#### A. Breach of contract/declaratory judgment

In Count II, plaintiff asserts that defendant breached the Policy. Plaintiff asserts the "Policy requires payment of direct losses caused by or resulting from the forced suspension of operations mandated by the Closure Orders issued in Illinois, including but not limited to Business Income and Extra Expense." (Complt. ¶ 115).

The parties agree that Illinois law applies. Under Illinois law, "insurance disputes are governed by general contract principles[.]" *Sigler v. GEICO Casualty Co.*, 967 F.3d 658, 660 (7th Cir. 2020). A court "must construe the policy as a whole and 'take into account the type of insurance purchased, the nature of the risks involved, and the overall purpose of the contract." *Windridge of Naperville Condo. Ass'n v. Philadelphia Indem. Ins. Co.*, 932 F.3d 1035, 1039 (7th Cir. 2019) (quoting *Travelers Ins. Co. v. Eljer Mfg., Inc.*, 197 Ill.2d 278, 757 N.E.2d 481, 491 (Ill. 2001)). "If the words of a policy are clear and unambiguous, 'a court must afford them their *plain, ordinary and popular meaning.*'" *Travelers Ins. Co. v. Eljer Mfg., Inc.*, 197 Ill.2d 278, 292-93 (Ill. 2001) (quoting *Outboard Marine Corp. v. Liberty Mutual Ins. Co.*, 154 Ill.2d 90, 108 (Ill. 1992)). If, on the other hand "the language of the policy is susceptible to more than one meaning, it is considered ambiguous and will be construed strictly against the insurer who drafted the policy and in favor of the insured." *Travelers*, 197 Ill.2d at 293.

1. **Business Income**

The Court first considers whether plaintiff has alleged a breach of the Business Income provisions of the Policy. Both the *Building and Personal Property Coverage Form* and the *Business Income (And Extra Expense) Coverage Form* provide coverage for lost business income. The *Building and Personal Property Coverage Form* in the Policy states:

> We will pay for the actual loss of "Business Income" and "Rental Value" you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct "loss" to property at a "premises" caused by or resulting from any Covered Cause of Loss." . . .

(Policy at CIC 043/Docket 5-1 at 44). The *Business Income (And Extra Expense) Coverage Form's* provision is nearly identical and states:

> We will pay for the actual loss of "Business Income" you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct "loss" to property at "premises" which

9

are described in the Declarations and for which a "Business Income" Limit of Insurance is shown in the Declarations. The "loss" must be caused by or result from a Covered Cause of Loss.

(Policy at CIC 100-101/Docket 5-1 at 101-102). Both *Forms* define "loss" as "accidental physical loss or accidental physical damage." (Policy at CIC 063, CIC 108/Docket 5-1 at 64, 109). Thus, the Policy covers lost "Business Income" caused by "accidental physical loss" or "accidental physical damage" during a "period of restoration."

Plaintiff alleges that the SARS-CoV-2 virus was present at the premises. Plaintiff further alleges that the presence of the virus causes "direct physical loss to the property" and "direct physical damage to the property." (Complt ¶¶ 55 & 56). These conclusory allegations are not entitled to be assumed true. *Iqbal*, 556 U.S. at 680 & 681 (noting that a "legal conclusion" was "not entitled to the assumption of truth[;]" and rejecting, as conclusory, allegations that "'petitioners 'knew of, condoned, and willfully and maliciously agreed to subject [him]' to harsh conditions of confinement"). What are entitled to be assumed true are plaintiff's allegations that the virus was physically present in the air at the premises and on surfaces at the premises.

The Court agrees with defendant, however, that, under the plain language of the Policy, the presence of the virus in the air or on surfaces does not constitute physical damage or physical loss. The word *physical* modifies loss in "physical loss" and damage in "physical damage." The plain meaning of physical is tangible or concrete. *See Chief of Staff LLC v. Hiscox Ins. Co. Inc.*, Case No. 20 C 3169, 2021 WL 1208969 at *2 (N.D. Ill. March 31, 2021) ("physical" means "tangible, concrete"); *see also Windridge*, 932 F.3d at 1040 ("We have also explained that "physical" generally refers to tangible as opposed to intangible damage."); *Travelers*, 197 Ill.2d at 312 ("In sum, this court now finds that, under its plain and ordinary meaning, the term "physical injury" unambiguously connotes damage to tangible property causing an alteration in

10

appearance, shape, color or in other material dimension. . . . The plain language of the policies unambiguously states that the insurable event which gives rise to the insurer's obligation to provide coverage is the *physical* damage to tangible property. The term "physical" limits the word "injury" in the policies' definition of "property damage.").

Plaintiff has not alleged any concrete or tangible damage to property. The presence of virus in the air does not physically damage any of the property at the premises. Nor does the presence of the virus on surfaces *physically damage* them. The surfaces are not alleged to be tangibly altered. This is obvious from the fact that no repair is necessary. One does not replace, rebuild or repair a countertop (or a doorknob or a floor) because SARS-CoV-2 (or salmonella, MRSA or the flu virus) is present on the surface. One simply cleans the surface.

Plaintiff argues that it lost use of the property when the Governor ordered the restaurant closed to the public and that such loss of use constitutes a physical loss. The Court disagrees. Plaintiff is correct that physical loss is not the same as physical damage, but that does not mean loss of use constitutes "physical loss" to property at the premises. Judge Feinerman made this point clear in *Chief of Staff*, explaining:

> [Plaintiff] is correct that the phrases 'direct physical loss' and 'direct physical . . . damage' are best read so as not to completely overlap and thereby render one or the other superfluous. But it does not follow that mere loss of *use*—without any tangible alteration to the physical condition or location of property at the insured's premises—falls within the meaning of either phrase. Read naturally, the two phrases can be read to exclude loss of use without rendering either superfluous. To illustrate, consider a thief who attempts to steal a desktop computer. If the thief succeeds, the computer is 'physical[ly] los[t]' but not necessarily 'physical[ly] damage[d].' If the thief cannot lift the computer, so instead of stealing it takes a hammer to its monitor in frustration, the computer would be physical[ly] . . . damage[d]' but not physical[ly] los[t].' Yet if the thief were only to change the password on the system so that employees could not log in, there would be neither 'physical . . . damage' nor 'physical loss,' though the computer would be unusable for some while. The Business Income provision might cover the first two cases, but it does not cover the third.

*Chief of Staff*, 2021 WL 1208969 at *3. This Court agrees. Plaintiff has not alleged physical loss to property at the premises, because plaintiff has not alleged any of the property at the premises is missing, destroyed or no longer intact.

This reading of the Policy is the only reading that makes sense in the context of the Policy's definition of "period of restoration." The Policy covers Business Income only during a "period of restoration," and the Policy defines "period of restoration" as the time between the loss and the earlier of: "[t]he date when the property at the 'premises' should be repaired, rebuilt or replaced with reasonable speed and similar quality; or [t]he date when business is resumed at a new permanent location." (Policy at CIC 063-64, CIC 108/Docket 5-1 at 64-65, 109). Plaintiff has not alleged that the presence of the virus required any of the property at the premises to be repaired, replaced or rebuilt (nor could it)[3] or that the presence of the virus required a move to a new permanent location.

The Court concludes that plaintiff's allegations that the virus was present in the air and on surfaces at the premises do not state a claim for breach of the Business Income provisions, both of which require either an "accidental physical loss" or "accidental physical damage" to property at the premises. This decision is consistent with other decisions in this district in which judges dismissed insurance claims for COVID-19 closures. *Chief of Staff*, 2021 WL 1208969; *Crescent Plaza Hotel Owner LP v. Zurich American Ins. Co.*, Case No. 20 C 3463, 2021 WL 633356 at *3 (N.D. Ill. Feb. 18, 2021) ("The plain wording of the phrase ['direct physical loss or damage'] requires either a permanent disposition of the property due to a <u>physical</u> change

---

[3] Plaintiff alleges that it made alterations to allow it to host people in a COVID-friendly environment. Plaintiff does not say what alterations it made, but the Court notes that additions such as Plexiglas, hand sanitizer, air purifiers or improved HVAC systems do not constitute repairs to damaged property where a plaintiff has not alleged damage to property. Instead, those additions constitute improvements to stop the spread of virus from one person to another.

("loss"), or <u>physical</u> injury to the property requiring repair ("damage")."); *The Bend Hotel Dev't Co., LLC v. The Cincinnati Ins. Co.*, __ F. Supp.3d __, __, Case No. 20 C 4636, 2020 WL 271294 at *3 (N.D. Ill. Jan. 27, 2021) ("[E]very court in this district that has interpreted similar provisions under Illinois law has concluded that the virus does not cause 'direct physical loss or damage' to property. . . . [P]laintiff has not alleged any physical alteration or structural degradation to the premises, nor the need to 'repair,' 'replace,' or 'restore' any physical element of the property in order to reopen for business."); *Bradley Hotel Corp. v. Aspen Specialty Ins. Co.*, __ F. Supp.3d __, __, Case No. 20 C 4249, 2020 WL 7889047 at *4 (N.D. Ill. Dec. 22, 2020) ("[Plaintiff does not allege that the suspension of operations was a result of any physical loss of or damage to the property. It does not allege that the physical property was changed or altered in any way. Instead, [plaintiff] alleges that the suspension of service was due to Governor Pritzker's Executive Orders, not for any reason related to the hotel property."); *T&E Chi. LLC v. Cincinnati Ins. Co.*, __ F. Supp.3d __, __, Case No. 20 C 4001, 2020 WL 6801845 at *5 (N.D. Ill. Nov. 19, 2020) ("The Court agrees with the courts that have found that loss of use of property without any physical change to that property cannot constitute direct physical loss or damage to the property."); *Sandy Point Dental PC v. Cincinnati Ins. Co.*, 488 F. Supp.3d 690, 693 (N.D. Ill. 2020) ("The words 'direct' and 'physical' which modify the word 'loss,' ordinarily connote actual, demonstrable harm of some form to the premises itself, rather than forced closure of premises for reasons extraneous to the premises themselves[.]"). The Court is aware that other judges have reached different conclusions, but the Court respectfully disagrees with those decisions.

Plaintiff places great weight on the fact that the Policy does not contain a virus exclusion. That matters, however, only if the Policy already granted coverage. *Sigler*, 967 F.3d at 660 ("an

insurance policy does not need to exclude coverage for something that it does not cover to begin with"). Because the Policy did not grant coverage, an exclusion was unnecessary.

### 2. Civil Authority

Plaintiff also asserts that defendant breached the Civil Authority provisions in the *Building and Personal Property Coverage Form* and the *Business Income (And Extra Expense) Coverage Form*. The former states:

> **(3) Civil Authority**
>
> When a Covered Loss causes *damage to property other than* Covered Property at the "premises", we will pay for the actual loss of "Business Income" and necessary Extra Expense you sustain caused by action of civil authority that prohibits access to the "premises", *provided that both of the following apply*:
>
> **(a)** *Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage*; and
>
> **(b)** The action of civil authority is taken *in response to dangerous physical conditions resulting from the damage* or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

(Policy at CIC 044/Docket 5-1 at 45) (emphasis added). The *Business Income (And Extra Expense) Coverage Form's* provision is nearly identical and states:

> **b. Civil Authority**
>
> When a Covered Cause of Loss causes direct *damage to property other than Covered Property at the "premises",* we will pay for the actual loss of "Business Income" you sustain caused by action of civil authority that prohibits access to the "premises", *provided that both of the following apply*:
>
> **(1)** *Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage*; and

14

> **(2)** The action of civil authority *is taken in response to dangerous physical conditions resulting from the damage* or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

(Policy at CIC 101/Docket 5-1 at 102) (emphasis added).

As defendant points out, plaintiff has not included allegations of "damage to property other than Covered Property." As the Court explained above, the presence of the virus does not constitute *damage* to property. Plaintiff has alleged that the Governor issued an Executive Order that required restaurants to "close to the public" and that "prohibited the public from accessing" the premises. (Complt. ¶¶ 69, 73). Plaintiff has not alleged that access to the area immediately surrounding the premises (such as sidewalks, streets and neighboring buildings) was prohibited. Furthermore, plaintiff has not alleged the Governor issued the order "in response to dangerous physical conditions resulting from the damage." Plaintiff has alleged neither damage nor dangerous physical conditions resulting therefrom. Plaintiff has not alleged, for example, the Governor was worried the building could collapse due to, say, a cracked foundation or could explode due to a leaking gas line caused by, say, a tornado. The Court does not see how that omission could be cured, because the purpose of the Governor's Executive Order was to prevent human beings from congregating and spreading the virus from one to another, not to protect people from dangerous property damage. Accordingly, the Court agrees with courts that have dismissed claims for COVID-related losses under Civil Authority provisions. *See, e.g., Chief of Staff*, 2021 WL 1208969 at *5-6; *Sandy Point Dental*, 488 F. Supp.3d at 694; *Bradley Hotel*, __ F. Supp. 3d at __, 2020 WL 7889047 at *4.

Plaintiff has not stated a claim for breach of the Policy. Although it is not clear that plaintiff can cure the defects by amendment, Count II is dismissed without prejudice.

In Count I, plaintiff seeks a declaration that it is entitled to coverage under the Policy. For the same reasons that Count II is dismissed, Count I is also dismissed without prejudice.

### B. Bad faith denial

In Count III, plaintiff seeks relief under 215 ILCS 5/155. That section allows a court to "allow as part of taxable costs" reasonable attorney fees plus a penalty amount if the insurance company's denial of a claim was "vexatious and unreasonable." 215 ICLS 5/155.

"It is neither vexatious nor unreasonable to litigate a 'bona fide dispute concerning the scope and application of insurance coverage,' let alone to deny coverage based on a position that prevails." *PQ Corp. v. Lexington Ins. Co.*, 860 F.3d 1026, 1038 (7th Cir. 2017) (quoting *Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 200 F.3d 1102, 1110 (7th Cir. 2000)). Thus, Count III cannot survive the dismissal of Count II. Count III, too, is dismissed without prejudice.

## IV. CONCLUSION

For the reasons set forth above, the Court grants defendant's motion [4] to dismiss. The Court dismisses Counts I, II and III without prejudice. Although the Court does not see how plaintiff could cure the complaint's deficiencies by amendment, the Court will give plaintiff one opportunity to file an amended complaint within 28 days. If it does not do so, this dismissal will automatically convert to a dismissal with prejudice and judgment will enter.

SO ORDERED.                                          ENTERED: April 29, 2020

_____
JORGE L. ALONSO
United States District Judge